DUNHAM *v.* TROY UNION RAILROAD COMPANY.

September, 1867.

In an action against a railroad company for taking and converting ties, a demand at the office of the company, on the director under whose instructions the defendant's superintendent took the property, is sufficient.

An action for wrongfully detaining personal property will lie, although defendant has wrongfully parted with possession. *

Samuel Dauchy and Harvey C. Dunham, sued defendants in the supreme court. Dauchy died pending the action, and it was continued by Dunham as survivor.

The complaint alleged that the defendant became possessed of and wrongfully detained from the plaintiffs two thousand one hundred and forty-six railroad ties, the property of the plaintiffs of the value of eight hundred and thirty-six dollars and ninety-four cents. Wherefore the plaintffs demanded that the defendant be adjudged to deliver the said property to the plaintiffs, and pay the plaintiff's damages for the detention

---

* See Jessop *v.* Miller in this series, and cases there cited.

thereof, and that said property may be forthwith delivered to the plaintiffs. The answer contained a general denial.

Upon the trial before a jury it appeared that the plaintiffs had sold and agreed to deliver to the firm of Deckers & Worthly seventeen thousand railroad ties, and which were to be delivered on or before August 1, 1853. This agreement bore date March 8, 1853. It was provided therein that the ties were to be delivered on the line of the Troy Union Railroad, in quantities as the said Deckers & Worthly might require. The ties when delivered were to be approved of by the chief engineer of the defendants' road, and the monthly estimates of the engineer of the ties delivered, under the agreement, were to be paid for on or before the 12th day of the succeeding month, less ten per cent. of such estimates, which was to be retained until the whole number of ties was delivered and approved as therein specified, and then said ten per cent. was to be paid within thirty days thereafter to the plaintiffs.

It also appeared that on February 9, 1853, the said Deckers & Worthly had entered into a contract with the defendant to construct and finish in every respect, in the most substantial and workmanlike manner, and to the satisfaction and acceptance of the chief engineer of said company, the grading, masonry, superstructure, bridging and fencing of said railroad, furnishing all the materials required, and the same was to be paid for upon monthly estimates of said chief engineer.

It further appeared that the plaintiffs had on a lot adjoining the defendants' road two thousand one hundred and forty-six ties over and above the number required to fill and complete said contract. It appeared that the same were taken by the superintendent of the defendants on or about August 8, 1854. The plaintiffs proved a demand of the ties, at the office of the defendants, of Mr. Vail, one of the directors of the defendants' company, and a refusal, and the value of the ties on the day the same were taken, and the interest thereon, and rested.

The defendants then moved for a nonsuit on the following grounds:

1. That plaintiffs had shown no title to the two thousand one hundred and forty-six ties in question.

2. That there is no evidence that the ties taken were not a part of the seventeen thousand sold to Decker & Co. by plaintiffs' firm under the contract.

3. That the evidence is wholly insufficient to entitle the plaintiffs to recover.

The court denied the motion. To which ruling and decision the defendants then and there duly excepted.

Further testimony was then taken and the motion for a nonsuit was subsequently renewed upon these grounds:

1. That the plaintiff has shown no title in himself, at the time of the commencement of the action, to the two thousand one hundred and forty-six ties claimed.

2. That the defendant has shown title in Decker & Co.

3. That the defendant has shown title in itself.

4. That it appears that the two thousand one hundred and forty-six ties claimed were part of the seventeen thousand delivered by the plaintiffs under their contract with Decker.

5. That these ties were paid for by defendant to Flood, one of the owners, and were taken under a license from him.

6. That the plaintiff had shown no sufficient demand of the ties in question, and cannot recover without such demand.

The court overruled the motion and refused the nonsuit, to which ruling and decision the defendant then and there duly excepted.

Further testimony was then adduced on both sides, and the jury found a verdict for the plaintiff for one thousand two hundred and ten dollars and thirty-five cents. And judgment thereon was affirmed at the general term.

*E. L. Fursman,* for defendants, appellants ;—Cited Pattison *v.* Adams, 7 *Hill,* 126 ; McKnight *v.* Dunlop, 4 *Barb.* 36 ; Rockwell *v.* Saunders, 19 *Id.* 473 ; McCurdy *v.* Brown, 1 *Duer,* 101 ; Harrison *v.* McIntosh, 1 *Johns.* 380 ; *Coke Litt.* 145 b ; Miller *v.* Adsit, 16 *Wend.* 335 ; Elwood *v.* Smith, 9 *How. Pr.* 528 ; Roberts *v.* Randell, 5 *Id.* 327, S. C. 3 *Sandf.* 707 ; Brockway *v.* Burnap, 12 *Barb.* 347, overruled in 16 *Id.* 309 ; Nash *v.* Fredericks, 12 *Abb. Pr.* 147 ; Nichols *v.* Michael, 23 *N. Y.* 264 ;

Hawkins *v.* Hoffman, 6 *Hill*, 586 ; Bowman *v.* Eaton, 24 *Barb.* 528.

*Martin J. Townsend,* for plaintiffs, respondents.

DAVIES, Ch. J. [After stating the facts.]—No question is presented for the consideration of this court, except upon the refusal to nonsuit the plaintiff. No other exception was taken upon the trial.

The first five grounds of that motion presented only questions of fact, and upon which there was conflicting evidence ; and the court properly refused to withdraw their consideration from the jury. Their verdict has established all these questions in favor of the plaintiffs, and the simple question is presented, whether a sufficient demand was made for the ties in question before suit brought.

Mr. Vail, the director of whom this demand was made at the office of the company, was acting as the recognized agent of the company in this matter. The superintendent of the defendant, who took the ties, testified it was done by the direction of Mr. Vail, a director of the company. The demand upon him was therefore sufficient to authorize the plaintiff to maintain this action.

The defendant insists that detinue will not lie, as there is no proof that the ties were in the actual possession of the defendant at the time of the demand, or at the commencement of the action. And it is claimed that the proof shows that the defendant had parted with the possession of at least a portion of the property to the New York Central Railroad Company. This court have held the contrary of this. In Nichols *v.* Michael, 23 *N. Y.* 264, we said: "That when a person is in possession of goods belonging to another, which he is bound to deliver upon demand, if he, without authority from the owner, parts with that possession to one who refuses to deliver them, he is responsible in detinue equally with the party refusing. He contributes to the detention. It is the consequence of his own wrongful delivery." The motion for a nonsuit was therefore properly refused.

The judgment should be affirmed with costs.

J. M. PARKER, J.—This action is brought to recover possession of two thousand one hundred and forty-six railroad ties, which, it is alleged, the defendant wrongfully detains from the plaintiff.

The question in the case arises upon an exception to the decision of the court upon the trial, denying a motion for a nonsuit; so that the inquiry here is, whether there is *any* evidence in the case upon which the jury were authorized to find a verdict for the plaintiffs.

The plaintiffs were under a contract with Deckers & Worthly (who were contractors to build defendants' railroad and supply the materials therefor), to sell and deliver them seventeen thousand ties, such as should bear inspection of the chief engineer of the road. They did haul and deposit on a lot called the Warren lot, near a brewery and adjacent to the railroad, more than the requisite number, and on October 17, 1853, they had on said lot (after having delivered ten thousand six hundred and fifty) nine thousand eight hundred and eighty-two ties, out of which, according to a computation and agreement on that day made between the plaintiffs, Deckers & Worthly, and the secretary of the company, it required seven thousand three hundred and sixty-nine to make up the full number of seventeen thousand. Of this required number, three thousand eight hundred was for the estimate for September, 1853, and the balance for rejected ties, and deficiencies for the estimates of previous months. There were, therefore, upon the lot two thousand five hundred and thirteen, over and above enough to fulfill the contract between the plaintiffs and Deckers & Worthly, provided they would all pass inspection. On the day above mentioned the secretary of the company, with the consent of Decker & Worthly, paid the plaintiffs the amount to which the three thousand eight hundred would come, less ten per cent., for which he agreed to be accountable, and the plaintiffs authorized the company to take the seven thousand three hundred and sixty-nine, which it appears included all that would be required to complete the road.

Between that day and February 22, 1854, when the road was opened, the company proceeded to take ties from time to time from the Warren lot. On August 8, 1854, they took two thou-

sand one hundred and forty-six ties from that lot, some seventeen hundred of which were sold to the Central Railroad Company, and the residue piled near the depot and used for repairs. These the plaintiffs allege were over and above the seven thousand three hundred and sixty-nine which defendants were authorized to take, and whether or not they did so is the question of fact in this case.

There is no direct and positive evidence that the defendants took more than the seven thousand three hundred and sixty-nine to which they were entitled, but it appears that after the taking of the two thousand one hundred and forty-six in question, only a few hundred were left scattered about on the lot. So that the surplus two thousand five hundred and thirteen were mostly taken by some person or persons. It appears that no person had authority from plaintiffs to take any from the lot except the defendant, nor was it shown that any other person did take any; but it appeared that defendant was engaged from October 17, 1853, to February 22, 1854, in taking ties from the lot for the road, from time to time, though how many it so took does not appear.

It appeared from the estimates introduced in evidence by the defendant, that the whole number required for the road was sixteen thousand eight hundred and eighty-two.

It is argued by the plaintiffs' counsel that the jury had the right to conclude that the defendant had used up the seven thousand three hundred and sixty-nine, which would make up the seventeen thousand, by February 22, 1854, and therefore that the two thousand one hundred and forty-six taken in August must have been a portion of the two thousand five hundred and thirteen surplus which it had no right to take, especially as but about the difference between these two numbers was left on the lot after the two thousand one hundred and forty-six were taken; and that this conclusion is strengthened by the fact that the two thousand one hundred and forty-six were not needed nor used for the construction of the road, and hence could not be included in the seven thousand three hundred and sixty-nine which according to the estimate were all or nearly all needed.

Dunham *v.* Troy Union R. R. Co.

It is impossible to say, in the absence of all evidence, as to the number taken by the company, between October, 1853, and February, 1854, that there was no foundation for such conclusion. It was therefore a case for the jury, and the nonsuit was properly denied.

But the defendants insist that the evidence shows that the ties in question were piled, when taken by defendant as complained of, within the bounds of the road, and therefore were in defendant's actual possession, from which the presumption arises that the title was in the defendant, and that the plaintiffs did not overturn this inference by evidence.

It is by no means clear that the ties were piled within the bounds of the railroad; but if they were at the time when taken up and carried to or near the depot, it is shown they had, by some person unknown to the plaintiffs, and without their authority, been removed from a place farther back on the lot to a place near the track, which fact, at least, tends to rebut the presumption of title arising from their being in defendant's possession, by being piled within the bounds of the road. Moreover the whole case proceeds upon the assumption on both sides, that the ties in question are a portion of those furnished by plaintiffs to Deckers & Worthly, and that unless they are a part of the seven thousand three hundred and sixty-nine, which plaintiffs gave the defendant liberty to take, they are plaintiffs'.

It is said again by the appellants' counsel that there is no evidence that the ties were in the possession of defendant, at the commencement of this action.

It is shown that the defendant took them on August 8, 1854, and it appears from the record that the suit was commenced on August 9, 1854. Now, though it appears that the larger portion of them was sold to the Central Railroad Company, it is not shown when, and it will not be presumed that this was before the commencement of the action.

Without considering what would have been the effect of such want of possession, if it had been shown, it is a sufficient answer to the objection now made that it was not shown upon the trial. Also that no such objection was taken at the trial.

Dunham *v.* Troy Union R. R. Co.

The record does not present any such error as calls for a reversal of the judgment. It must therefore be affirmed.

All the judges concurred except BOCKES, J., absent, and PORTER, J., not voting.

Judgment affirmed, with costs.